IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

D. LANCE GIBSON                PLAINTIFF

v.         CIVIL NO. 08-5256

MICHAEL J. ASTRUE, Commissioner
Social Security Administration            DEFENDANT

**<u>MEMORANDUM OPINION</u>**

Plaintiff, D. Lance Gibson, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying his claim for supplemental security income (SSI) benefits under the provisions of Title XVI of the Social Security Act (Act). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. <u>See</u> 42 U.S.C. § 405(g).

**I. Procedural Background:**

Plaintiff protectively filed his current application for SSI on March 30, 2006, alleging an inability to work since November 9, 2001, due to injuries he sustained to his head, shoulder, neck, back and ankle as a result of his involvement in a motor vehicle accident.[1] (Tr. 56-58, 120). An administrative hearing was held on January 28, 2008, at which Plaintiff appeared with

---

[1] Title XVI benefits are not payable for the period prior to the application. <u>See</u> <u>Cruse v. Bowen</u>, 867 F.2d 1183, 1185 (8th Cir. 1989); 20 C.F.R.§§ 416.330, 416.335. Therefore, the relevant time period in this case is March 30, 2006, the date he filed his application, through June 27, 2008, the date of the ALJ's hearing decision.

counsel and testified. (Tr. 198-255). Plaintiff's father, Plaintiff's vocational rehabilitation counselor and a vocational expert also testified at this hearing.

By written decision dated June 27, 2008, the ALJ found that during the relevant time period Plaintiff had an impairment or combination of impairments that were severe. (Tr.15). Specifically, the ALJ found Plaintiff had the following severe impairments: "osteoarthritis, a mood disorder, headaches and osteoarthritis of the right ankle." (Tr. 15). However, after reviewing all of the evidence presented, she determined that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 15). The ALJ found Plaintiff retained the residual functional capacity (RFC) to perform light work; however, the ALJ noted Plaintiff was restricted from driving due to a fear of driving; that Plaintiff could occasionally reach overhead; and that due to protection from headaches and side effects of medication, Plaintiff could not climb scaffolds, ladders, or ropes or be exposed to unprotected heights, dangerous equipment or machines. (Tr. 15). From a mental standpoint, the ALJ found Plaintiff could perform routine work with superficial contact incidental to work with the public and co-workers; and work with non-complex simple instructions, which is learned by rote with few variables, that requires little judgment and concrete, direct and specific supervision. (Tr. 15). With the help of a vocational expert, the ALJ determined Plaintiff could perform other work as a toy assembler, a machine tender and an off bearer. (Tr. 21).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which, after reviewing the additional evidence, denied that request on September 23, 2008. (Tr. 4-7). Subsequently, plaintiff filed this action. (Doc. 1). This case is before the undersigned pursuant

to the consent of the parties. (Doc. 4). Both parties have filed appeal briefs, and the case is now ready for decision. (Doc. 6, 7).

**II.     Applicable Law:**

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Cox v. Astrue, 495 F.3d 614, 617 (8th Cir. 2007). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's decision. Id. "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision." Id. As long as there is substantial evidence in the record to support the Commissioner's decision, the court may not reverse the decision simply because substantial evidence exists in the record to support a contrary outcome, or because the court would have decided the case differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001). If we find it possible "to draw two inconsistent positions from the evidence, and one of those positions represents the Secretary's findings, we must affirm the decision of the Secretary." Cox, 495 F.3d at 617 (internal quotation and alteration omitted).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir.2001); see also 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3),

1382(3)(c). A Plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

### A.  The Evaluation Process:

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. See 20 C.F.R. § 416.920. Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of his residual functional capacity. See McCoy v. Schweiker, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § 416.920.

### III.  Discussion:

Of particular concern to the undersigned is the ALJ's RFC determination. Well-settled precedent confirms that the ALJ bears a responsibility to develop the record fairly and fully, independent of the claimant's burden to press his case. Snead v. Barnhart, 360 F.3d 834, 836-37 (8th Cir.2004). That duty includes seeking clarification from treating physicians if a crucial issue is undeveloped or underdeveloped. See Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004). The ALJ is also required to re-contact medical sources and may order consultative evaluations when the available evidence does not provide an adequate basis for determining the merits of the disability claim. See 20 C.F.R. §§ 416.912(e), 416.919a(b); Coleman v. Astrue ,498 F.3d 767,

771 (8th Cir. 2007). The ALJ's duty to develop the record extends even to cases like Plaintiff's, where an attorney represented the claimant at the administrative hearing. Id. It is incumbent upon the ALJ to establish by medical evidence that the claimant has the requisite RFC and to question a claimant in detail about his abilities.

After reviewing all the evidence of record, the undersigned in particularly troubled by the ALJ's analysis of Plaintiff's alleged disabling migraine headaches. In the present case, medical evidence from the Holden Psychiatric Institute reveals that on April 26, 2006, Plaintiff complained of experiencing debilitating headaches a couple of times per week. (Tr. 131). Plaintiff was noted to be a patient of Dr. Donnie Joe Holden who had prescribed Plaintiff Lexapro, Klonopin and Lithium. The medical evidence further reveals, after performing a consultative evaluation of Plaintiff on June 6, 2006, Dr. C.R. Magness diagnosed Plaintiff with, among other things, a complex migraine headache syndrome. (Tr. 141). Plaintiff also reported debilitating migraine headaches to Dr. Ronald E. McInroe during a consultative evaluation on June 15, 2006. (Tr. 152-156). During the June 15th evaluation, Plaintiff reported an increase in his headaches since his motor vehicle accident in 2001. Dr. McInroe noted Plaintiff reported wanting to die several times a week and that this thought was always associated with a migraine headache. Dr. McInroe also opined Plaintiff demonstrated deficits in attending and concentrating throughout the evaluation. (Tr. 156). In October of 2007, Dr. G. Richard Smith, also noted Plaintiff suffered from severe atypical headaches. (Tr. 189). While each of these examining physicians noted Plaintiff's diagnosis of migraine headaches, no physician opined as to what impact these headaches had on Plaintiff's ability to perform activities of daily living.

The ALJ, in concluding that Plaintiff could perform the exertional and non-exertional requirements of at least light work with some limitations, relied on RFC assessments completed by non-examining medical consultants, indicating Plaintiff's ability to perform within the light work category. (Tr. 142-149, 187). We note that the opinion of a consulting physician who examined the Plaintiff once or not at all does not generally constitute substantial evidence. See Jenkins v. Apfel, 196 F.3d 922, 925 (8th Cir. 1999). Furthermore, medical evidence dated after these assessments were completed report Plaintiff's continued complaints of severe headaches.

The court acknowledges that the ALJ pointed out Plaintiff was accepted into the Timber Ridge Ranch Neurorehabilitation Center in November of 2005 to undergo therapy to help Plaintiff learn to take care of himself without significant assistance from an attendant or family member, and that Plaintiff left against medical advice after one day. When asked about his stay at the facility during the January 28, 2008, administrative hearing, Plaintiff testified that he left the facility because he woke up in the middle of his first night with another patient standing over his bed which "really really really freaked" him out. (Tr. 211). Plaintiff testified he was not able to lock his door while at the facility and felt that he did not belong in that setting. While the ALJ mentioned Plaintiff left this facility against medical advice, she failed to include why Plaintiff left the facility.

A review of all of the medical evidence of record clearly shows Plaintiff experiences limitations due to his severe migraine headaches. As it appears no examining medical professional opined as to the extent of limitation caused by Plaintiff's migraine headaches, the undersigned believes remand is necessary for the ALJ to more fully and fairly develop the record regarding Plaintiff's migraine headaches.

AO72A
(Rev. 8/82)

On remand, the ALJ is directed to address interrogatories to the physicians who have evaluated and/or treated Plaintiff asking the physicians to review Plaintiff's medical records; to complete a RFC assessment regarding Plaintiff's capabilities during the time period in question; and to give the objective basis for their opinions so that an informed decision can be made regarding Plaintiff's ability to perform basic work activities on a sustained basis. Chitwood v. Bowen, 788 F.2d 1376, 1378 n.1 (8th Cir. 1986); Dozier v. Heckler, 754 F.2d 274, 276 (8th Cir. 1985). The undersigned suggests that ALJ also order a neurological consultative exam, in which, the consultative neurologist should be asked to review the medical evidence of record, perform a physical examination and appropriate testing needed to properly diagnose Plaintiff's condition and level of pain, and complete a medical assessment of Plaintiff's ability to perform work related activities. See 20 C.F.R. § 416.917.

We further note that the medical evidence is also somewhat ambiguous with regard to Plaintiff's mental limitations and his mental RFC. On remand the ALJ is directed to address interrogatories to Drs. Holden and Smith, asking the physicians to review Plaintiff's medical records and complete a mental RFC assessment regarding Plaintiff's capabilities during the time period in question.

With this evidence, the ALJ should then re-evaluate Plaintiff's RFC and specifically list in a hypothetical to a vocational expert any limitations that are indicated in the RFC assessments and supported by the evidence.

## IV.    Conclusion:

Accordingly, we conclude that the ALJ's decision is not supported by substantial evidence, and therefore, the denial of benefits to the Plaintiff, should be reversed and this matter

should be remanded to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

DATED this 23rd day of December 2009.

/s/ *Erin L. Setser*
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE